UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CATHIE L. PARKER,<br><br>              Plaintiff,<br><br>   v.<br><br>IDEARC MEDIA SALES – WEST INC.,<br><br>              Defendant. | CASE NO. C07-1293BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

    This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. 31). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

## I. PROCEDURAL BACKGROUND

    On August 17, 2007, this action was removed from the Superior Court of the State of Washington in and for the County of Snohomish to the United States District Court for the Western District of Washington at Seattle pursuant to 28 U.S.C. §§ 1331, 1332 and 1441. Dkt. 1.

    On August 31, 2007, Plaintiff Cathie Parker filed an Amended Complaint against Defendant Idearc Media Sales – West Inc. alleging damages for gender and disability discrimination in violation of the Washington Law Against Discrimination ("WLAD"),

ORDER - 1

1  RCW Chapter 49.60, conduct in violation of the Family and Medical Leave Act

2  ("FMLA"), 29 U.S.C. Chapter 28, and defamation of character.  Dkt. 11.

3        On December 14, 2007, the action was transferred to the undersigned.  Dkt. 16.

4        On November 13, 2008, Defendant filed a Motion for Summary Judgment.  Dkt.

5  31.  On December 1, 2008, Plaintiff responded and included a Motion to Strike evidence

6  submitted by Defendant.  Dkt. 45.  On December 5, 2008, Defendant replied.  Dkt. 52.

## II. FACTUAL BACKGROUND

      On May 9, 2005, Defendant hired Plaintiff as a telephone directory print and on-line sales representative.  Dkt. 48, Declaration of Cathie Parker ("Parker Decl."), ¶ 2.  Plaintiff worked on the Snohomish County, Seattle and Eastside, Bellingham, and Skagit County directories, dealing with 50 to 60 advertisers in the course of her employment.  Dkt. 44-2, Deposition of Cathie Parker ("Parker Dep."), at 40, 44.

      Sometime in late 2005, Plaintiff claims that her immediate supervisor, Angela Chagolla[1], suggested that she discuss a potential customer with another employee, Tim Dang.  Parker Decl., ¶ 8.  Mr. Dang gave Plaintiff "contact information for a customer to whom he had made a relatively small sale."  *Id*.  In October 2005, Plaintiff contacted that customer which resulted in three directory sales to an auto body shop and a "counseling" service.  *Id*., ¶ 9.  Plaintiff claims that both sales used cell phones and that the "counseling" service sale was for $450 per month.  *Id*.

      Defendant claims that these sales may have violated corporate policies that are outlined in its employees' Code of Conduct and sales' Credit Policy.  Dkt. 31 at 6-9.  Defendant claims that:

> The Code of Conduct requires employees to "create accurate records that reflect the true nature of the transactions . . ., resolve discrepancies in any records and make appropriate corrections," and prohibits falsification or improper alteration of records.  The Credit Policy establishes limits for extending credit and obtaining advance payments, and provides for

---

[1] Mrs. Chagolla recently changed her last name to Robledo. Dkt. 31 at 5, n. 5; Dkt. 45 at 4, n. 2.  Consistent with the parties, the Court will refer to her as Mrs. Chagolla.

> heightened safeguards for authorizing credit to certain types of customers with a historical risk of non-payment. Specifically, a sales representative must obtain a credit application or twelve months' advance payment for customers whose occupation is considered a "high risk" for non-payment, such as a psychic, a palm reader, or an astrologer. And if a customer maintains only a cell phone and no land line, the representative can only sell $250 per month in advertising without obtaining a credit application.

*Id.* at 4 (internal citations omitted); *see also* Dkt. 32, Declaration of Matthew Billings ("Billings Decl."), Exhs. A, B, and C (actual policies).

In March 2006, Plaintiff applied for and was granted a leave of absence. Parker Decl., ¶ 14. Plaintiff's husband passed away in March of 2005 and she asked for leave because of depression associated with his passing. *Id.* Plaintiff was granted medical leave from March 2, 2006 to July 10, 2006. Parker Dep. at 54-55.

During Plaintiff's leave of absence, Defendant's Credit Department transmitted three unpaid and delinquent accounts to Mrs. Chagolla. Dkt. 42-3, Deposition of Angela Chagolla ("Chagolla Dep.") at 32. Mrs. Chagolla unsuccessfully attempted to reach these non-paying customers. *Id.* at 32-33. She then drove to the physical street address of the businesses and found "a dilapidated apartment complex with no mailbox markings for the businesses." *Id.* at 28-29. Mrs. Chagolla reported her findings to her supervisor, Matthew Billings, who then contacted one of Defendant's Security Investigators, Christian Deloof. *Id.* at 32; Billings Decl., ¶¶ 19-21.

Mr. Deloof conducted his own investigation that included at least one interview with Plaintiff. Billings Decl., ¶¶ 22-25. On September 12, 2006, Mr. Deloof transmitted an Investigative Report to Mr. Billings, the Director of Human Resources, Gloria Charles, and three members of Defendant's Corrective Action Committee. *Id.*, Exh. F. The report stated that "[i]t was alleged that Ms. Parker may have created three fictitious sales contracts." *Id.* at 1. He concluded that "[i]t could not be proven that Ms. Parker created any fictitious accounts, but she acknowledged violating sales policy by selling to a 'high risk' customer without requiring a credit application." *Id.* Defendant claims that the

1 "high risk" customer was a psychic whom Ms. Parker listed under the "counseling"
2 heading. Dkt. 31 at 8.

In late September 2006, Plaintiff became severely depressed. Parker Decl., ¶ 22. Plaintiff was hospitalized and applied for medical leave under the FMLA. *Id.* ¶ 23. Plaintiff's request was granted. *Id.*

On October 2, 2006, Mr. Billings and the local Human Resources Manager jointly recommended that Plaintiff "receive a final written warning for violating [Defendant's] Code of Conduct." Billings Decl., ¶ 29. On October 16, 2006, Defendant terminated Plaintiff's employment for "fraud/violating the [Defendant's] Standards of Business Conduct Policy." Parker Dep., Exh. 21 at 1. On October 20, 2006, Plaintiff internally appealed her termination. *Id.*, Exhs. 22 and 23. Defendant denied her appeal. *Id.* Exh. 24.

### III.  DISCUSSION

**A.  Motion to Strike**

Plaintiff moves to strike the portion of "the Declaration of Georgia Scaife that identifies 12 Manhattan employees who allegedly engaged in conduct in violation of company policy." Dkt. 45 at 15. Plaintiff claims that one of her interrogatories asked Defendant to identify employees who had been terminated for violation of company policies within the last ten years. *Id.* at 4. Plaintiff claims that Defendant did not disclose the 12 employees who Ms. Scaife states were terminated. *Id.* Defendant argues that it only uses the fact of these terminations as background information for the Court and, even if it failed to initially disclose or supplement its initial disclosures, such error was harmless based on the limited usage of the relevant information. Dkt. 53 at 14. The Court agrees that, for the purposes of this motion, any failure to disclose this tangential information would be harmless. Therefore, Plaintiff's motion to strike is denied.

**B.    Motion for Summary Judgment**

Defendant moves for summary judgment "dismissing all of Plaintiff's claims in their entirety and with prejudice." Dkt. 31 at 22. Plaintiff "voluntarily dismisses her claims of gender discrimination and retaliation under the WLAD and her state common law defamation claim." Dkt. 45 at 4, n. 3. At this procedural posture, voluntary dismissal by Plaintiff would require "a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A)(ii). The Court will consider Plaintiff's voluntary dismissal as a concession that Defendant's motion for summary judgment has merit as to those particular claims. Therefore, the Court grants Defendant's motion for summary judgment on Plaintiff's claims for gender discrimination and retaliation under the WLAD and her state common law defamation claim.

Plaintiff's remaining claims are (1) violation of the FMLA and (2) disability discrimination and retaliation under the WLAD.

**1.    Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

### 2. **Family and Medical Leave Act**

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for . . . a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1). An employee who exercises this right shall be entitled, on return from leave, to her job or an equivalent job. 29 U.S.C. § 2614(a)(1). "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the Act. 29 U.S.C. § 2615(a)(1).

To prevail on an FMLA interference claim alleging retaliatory termination, an employee must show "that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001). "She can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both." *Id*.

Defendant argues that "the centralized decision makers who decided to terminate Plaintiff's employment did not learn of [Plaintiff's] September FMLA leave until after the decision to terminate had been made." Dkt. 53 at 9. Defendant concludes that "[b]ecause the undisputed evidence establishes that [the Corrective Action Committee] did not know about the leave when it made the decision to terminate Plaintiff's employment, her FMLA claim must be dismissed." *Id.* Plaintiff's burden, however, is not to show that company executives had *actual* knowledge that a particular employee was currently on FMLA leave when they decided to terminate her. The binding precedent is that Plaintiff must produce either circumstantial or direct evidence that FMLA-protected leave was a "negative factor" in Defendant's decision to terminate her. *See supra*.

Plaintiff argues that there exists "a plethora of circumstantial evidence [that] links [Plaintiff's] termination and her protected status." Dkt. 45 at 21. For example, Robin Huff claims that "[t]here were a number of other employees who were either mysteriously demoted or terminated while on or shortly after returning from leave or [short-term-disability]: Anne Marie Miles; Sharon Aide; C.J. Walton-Silver; and Steve Maples." Dkt. 49, Declaration of Robin Huff, ¶ 11. Ms. Huff also claims that "[e]ven [she] had concerns about being terminated for taking [short-term disability]." *Id.* ¶ 12.

Plaintiff also claims that Defendant's Vice President and General Counsel, William Mundy, was aware that she had been on short-term disability. Dkt. 45 at 12-13. During Mr. Mundy's deposition, Plaintiff's counsel provided him with two "Investigative Reports" regarding Mr. Deloof's investigation into the delinquent accounts sold by Plaintiff. One report contains the statement that "Security was informed that Ms. Parker was on short-term disability" whereas the other report does not contain any reference to Plaintiff's leave. *Compare* Dkt. 43 at 69-72 *with id.* at 73-76. Mr. Mundy testified as follows: "I don't think that I received both [reports]. I think I would have received the final report, which appears to be [the report without the reference to Plaintiff's leave]." Dkt. 56-2 at 49. For purposes of summary judgment, Plaintiff is entitled to the inference

that Mr. Mundy received a copy of the report that referenced that she was on leave. Thus, as a member of the Corrective Action Committee, Mr. Mundy could have used Plaintiff's leave as a negative factor in the committee's decision to terminate her.

Last, "the proximity in time between the [FMLA] leave and [plaintiff's] termination also provides supporting evidence of a connection between the two events." *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1137 (9th Cir. 2003). In this case, Plaintiff was approved leave on September 26, 2006, and Plaintiff was terminated on October 2, 2006. For purposes of summary judgment, Plaintiff is entitled to the inference of retaliatory termination that may be drawn from the close proximity in time between these two events.

Therefore, Plaintiff has shown that there exists material questions of fact regarding whether her leave was a negative factor in the decision to terminate her employment. The Court denies Defendant's motion for summary judgment on this issue.

### 3. Washington Law Against Discrimination

Plaintiff claims that her "disability substantially motivated [Defendant's] unlawful discriminatory and retaliatory actions violating the Washington Law Against Discrimination." Complaint, ¶ 4.2.

#### a. Retaliation

To successfully allege a claim for unlawful retaliation, a plaintiff must prove that (1) she engaged in a statutorily-protected activity, (2) an adverse employment action was taken, and (3) a causal link exists between the statutorily-protected activity and the alleged retaliatory action. *Estevez v. Faculty Club of the Univ. of Wash.*, 129 Wn. App. 774, 797 (2005).

Defendant claims that Plaintiff "cannot, as a matter of law, establish that she engaged in any protected activity." Dkt. 31 at 20. Plaintiff claims that she was fired for requesting and taking FMLA leave. *See* Dkt. 45. Plaintiff, however, fails to cite any binding authority for the proposition that requesting or taking FMLA leave is a

1 "statutorily-protected activity" under the WLAD. Moreover, the Court is unaware of any such authority. Therefore, the Court grants Defendant's motion for summary judgment on Plaintiff's retaliation claim under the WLAD because Plaintiff has failed to show that she was engaged in a WLAD-protected activity when Defendant terminated her employment.

### b. Discrimination

Plaintiff claims that Defendant discriminated against her based on her disability. In Washington, courts have adopted the *McDonnell-Douglas* three-part burden allocation framework for disability discrimination claims. *McDonnell-Douglas Corp. v. Percy Green*, 411 U.S. 792 (1973). Under *McDonnell-Douglas*, the plaintiff has the initial burden to prove a prima facie case. *Anica v. Wal-Mart Stores, Inc.*, 120 Wn. App. 481, 488 (2004). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to present evidence of a legitimate non-discriminatory reason for its actions. *Id*. The burden then shifts back to the plaintiff to produce evidence that the asserted reason is actually pretext. *Id*.

### i. Prima Facie Case

To present a prima facie case for a disparate treatment because of disability discrimination, a plaintiff must establish that she was (1) disabled, (2) subject to an adverse employment action, (3) doing satisfactory work, and (4) her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination.[2] *Id*. Even though the plaintiff must prove each element of the *McDonnell-Douglas* test, the requisite degree of proof required to establish a prima facie case is "minimal and does not even need to rise to the level of a preponderance of evidence." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002).

---

[2] Defendant incorrectly cites the test for racial discrimination, which requires the plaintiff to show that she was treated less favorably than a similarly situated employee. *See* Dkt. 53 at 10 (citing *Washington v. Boeing*, 105 Wn. App. 1, 13 (2000) ("prima facie case of racial discrimination")).

ORDER - 9

Defendant does not contest that Plaintiff was either disabled or subject to an adverse employment action. Plaintiff qualified for medical leave and Defendant terminated her employment. There may be an issue whether Plaintiff was "doing satisfactory work" based on the investigation for fraud, but Defendant has failed to challenge Plaintiff's work product prior to her termination. Finally, a juror could make a reasonable inference of unlawful discrimination based on the proximity of Plaintiff's medical leave and Defendant terminating her employment. *See supra*. Therefore, Plaintiff has established a prima facie case.

### ii. Legitimate Reason

Defendant argues that it had a legitimate, non-discriminatory reason for terminating Plaintiff's employment. Dkt. 31 at 16. Defendant claims that Plaintiff "violated [Defendant's] Code of Business Conduct and Credit Policy by selling high risk and cell phone-only advertisements without obtaining the proper credit applications." *Id*. Plaintiff counters that the "policies [Defendant] claims she violated were not existing at the time of her termination . . . ." Dkt. 45 at 27. Taking the evidence in the light most favorable to Plaintiff, there is at least a question of fact whether she violated an existing policy during her employment.

### iii. Pretext

To demonstrate pretext indirectly, a plaintiff must offer evidence that the proffered reason for the employment decision is not worthy of belief. *Kuyper v. State*, 79 Wn. App. 732, 738 (1995). To show that the employer's justification is unworthy of belief, the plaintiff may show that the justification has no basis in fact, that the justification was not actually a motivating factor behind the employment decision, that the justification lacks sufficient temporal proximity to the employment decision, or that the justification was not a motivating factor in employment decisions regarding other employees in the same circumstances. *Id*. at 738-39.

Defendant argues that "Plaintiff has provided no evidence of pretext." Dkt. 31 at 16. It is undisputed, however, that Plaintiff's supervisor initially recommended that Plaintiff receive only a written warning for violating Defendant's Code of Conduct. *See supra*. It is also undisputed that, after Plaintiff began her medical leave, corporate officers in Houston "rejected" that initial recommendation and concluded that Plaintiff should be terminated for the alleged violations of corporate policies. Dkt. 53 at 11-12. Moreover, Plaintiff has produced evidence that one of those corporate officers, Mr. Mundy, may have known that Plaintiff was on medical leave when the initial written warning recommendation was "rejected." *See supra*. Thus, Plaintiff has produced evidence that creates the inference that Defendant's legitimate reason has no basis in fact.

Therefore, the Court denies Defendant's motion for summary judgment on Plaintiff's claim for discrimination under the WLAD. Plaintiff has shown a prima facie case of discrimination and has shown that Defendant's legitimate reason for her termination could be merely pretext.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment (Dkt. 31) is **GRANTED in** part and **DENIED in part** as follows:

1. Defendant's motion is **GRANTED** as to Plaintiff's claims of gender discrimination and retaliation under the WLAD, disability retaliation under the WLAD, and her state common law defamation claim; and

2. Defendant's motion is **DENIED** as to Plaintiff's claims for violation of the FMLA and Plaintiff's claim for discrimination under the WLAD.

DATED this 30th day of January, 2009.

BENJAMIN H. SETTLE
United States District Judge